Cabell, J.
The question in this case, is, whether the legacies and devises given by the will of Peter Hansbrough, to his granddaughter Maria Hansbrough (now mrs. Hooe) were revoked, adeemed or satisfied, by the subsequent advancement in real and personal property, made to her by him, on her marriage to mr. Hooe.
*322 The doctrine upon this subject, so far as relates to legacies, was very concisely, but lucidly laid down' by lord Eldon in Trimmer v. Bayne, 7 Ves. 508. He says, “ The rule is settled, that where a parent, or person in loco parentis, gives a legacy as a portion, and afterwards, upon marriage or- any other occasion calling for it, advances in the nature of a portion to that child, that will amount to an ademption of the gift by the will, and this court will presume he meant to satisfy the one by the other.” This rule was fully considered, recognized and acted on by this court, in the case of Jones v. Mason, 5 Rand. 577. I am clearly of opinion, that this rule is applicable to, and is decisive of, this case, so far as respects the legacies of slaves and other personal property ; and consequently, that the decree as to those subjects is correct.
The question whether the devises of real estate, also, were revoked, adeemed or satisfied, by the subsequent advancement, is attended with more difficulty. After much reflection, however, I have come to the conclusion, that this question likewise, is to be determined in the affirmative.
It is said, that no case has occurred in which the doctrine of the ademption of legacies has bqen extended to devises of real estate. This is true. But it is equally true that there is no case, in Virginia at least, deciding that the doctrine is inapplicable to such devises. The question is now fairly presented, for the first time, and we must meet it. The novelty of a question is well calculated to inspire caution and circumspection, but is not sufficient to control our judgment. New cases are perpetually occurring; but they can be correctly decided, only by the application of old and well established principles. The case of Jones v. Mason was a new one: nothing like it could have occurred in England; nor had such case ever been presented to our own courts. It was there decided, for the first time, that a specific *323 legacy of slaves, given as a portion, was adeemed, in part, by a subsequent advancement of other slaves, made and intended by the testator, in lieu of certain of his slaves given by the will. It was thus decided, because, according to the practice in our country, it had become common for parents to provide portions for their children by a bequest of slaves, and because it was, on principle, as jest and proper that such portions should be adeemed and satisfied by a subsequent advance of other slaves in lieu thereof, as if the portion provided by the will, and that provided by the subsequent advancement, had both consisted of money. It seems to me, that this principle is quite as applicable, in this country, to a portion by will consisting of lands; for it is well known, that it is almost as common to provide portions for children by a devise of lands, as to provide them by a bequest of slaves; and, as far as my observation has extended, it is more common to provide them in lands, than in money: whereas, in England, it is very rare that younger children are advanced otherwise than in money. Our legislature has, in many cases, manifested a disposition to break down the distinction, which formerly existed, between real and personal estate. Thus, in case of intestacy, the real and personal estate will, with a very few exceptions, go to the same persons; and an advancement of rea.1 estate is to be brought into hotchpot in the distribution of personalty, and an advancement of personalty is to be brought into hotchpot in the division of the real estate. It seems to me, that, in relation to the subject now before us, the nature of the estate given, whether real or personal, is a matter of no consequence. The object for which it is given, is the thing to be attended to. If it be given as a portion for the child, whether it he realty or personalty, it ought to be adeemed by a subsequent advancement made by the parent in lieu of the legacy. Now, in the case before us, it is impossible to look at the facts, and not to see that *324 the legacies and devises in the will were intended as a portion ; and it is equally impossible not to see, that the provision by the advancement, on the marriage, was intended by mr. Hansbrough to be in lieu of, and not in addition to, the provision made by the will. What is to prevent us from applying to this case the same principle of equity that was applied in the case of Jones v. Mason? I hope I have shewn, that there is nothing in the objection as to the novelty of the case. It is contended for the appellees, that our hands are tied up by our statute concerning wills, which, after prescribing the manner in which a will of lands shall be made, declares, that “ no devise so made, or any clause thereof, shall be revocable but by the testator or testatrix destroying, cancelling or obliterating the same, or causing it to be done in his presence, or by a subsequent will, codicil or declaration in writing, made as aforesaid.” But, as judge Green observed in Jones v. Mason, this clause is the same in effect with the clause in the statute of 1748, which was taken from the 22nd section of the english statute of frauds, 29 Ch. 2. and which provides, that “ no will in writing, or any devise therein of chattels, shall be revoked by a subsequent will, codicil or declaration, unless the same be in writing.” The statute of frauds, however, has never been held in England, to prohibit the revocation, either of wills of laird or of personalty, by implications founded on events subsequent to the making of the will. And in the case of Wilcox v. Rootes, 1 Wash. 140. it was expressly decided, that the subsequent marriage of the father, and the birth of a child, was an implied revocation of a will, even at law, both as to real and personal estate. I see no objection to extending the principle, at least in equity, to an implied revocation by a subsequent advancement, made and intended by the testator in lieu of the provision made by the will. The fact that a legatee of personal property can recover his legacy only in a court of *325 equity, while a devisee of lands, taking the legal title, may recover in a court of law, seems to me to make no material difference in the case. It very often happens, that the legal title is in one person, while the equitable is in another; and, in such cases, it is competent to a court of equity to prevent the assertion, or enforce the surrender, of the legal title.
I am of opinion to reverse the decree, so far as it purports or intends to give to the appellees any portion of the real estate; and to dismiss the bill.
Brooke, J. concurred.
Tucker, P.
If there can be a case in which a grandfather can place himself in loco parentis in relation to his grandchildren, of which there is no reasonable doubt, this is such a case. John Hansbrough, the son of the testator, being dead, his children are taken into the family of the grandfather and receive their nurture and education from him; and by his will, he places them in the position of children, by devises and bequests of real and persona] property to be divided among them and his sons and daughters, giving them the share of their deceased father. The bequests to them are not of independent and substantive legacies, which might be deemed an emanation from his mere bounty; but it is a partition among his living children and the children of a deceased son, of his entire estate. For although some of the clauses of the will contain devises and bequests of distinct and separate property to be divided among them, yet there are others, in which other portions of the estate are given to the children and grandchildren together, to be divided equally amongst them, except that the grandchildren are to take the portion of their father. And the whole will taken together shews very distinctly that it was the testator’s design that his grandchildren should have what his son John would have *326 had. He has thus placed them in loco filiorum, and by consequence places himself in loco parentis.
I am not less satisfied, that the intention of Peter Hansbrough, the testator, was that the settlement made upon the marriage of his granddaughter Maria should be a satisfaction of what he had given her by his will. He did not design a double portion for her. The peremptory style of mr. Hooe’s communication was in no wise calculated to conciliate the grandfather, and to induce him to give to this daughter of his son John twice as much as to her brothers and sisters. The facts proved establish the refusal in the first instance, and the reluctance throughout, of the testator to enter into the marriage agreement. He produced his will and insisted on its provisions as being sufficient. But the matter was pressed upon him, and he at length assented. We see in this no evidence of a disposition to add to what he had given by the will. On the contrary, as I understand the transaction, he on his part was unwilling to bind himself by contract to do that which he had already done by his will, and thus to take from himself that power of revocation which the circumstances of the case or his own natural disposition might have made it desirable to retain. Mr. Hooe, on the other hand, was probably unwilling to subject himself to the caprices of the old man, and may have been desirous to make the advancement (which seems to have been a sine qua non) as irrevocable as the marriage tie, by which he was to be indissolubly bound. This, I take it, was the real matter of difference; nor does there appear to be the least reason for believing that either of the parties thought of the provisions of the settlement being cumulative, instead of a mere substitute for the provisions of the will.
Now, it is an established principle that when a parent, or person in loco parentis, gives a legacy as a provision, and afterwards upon marriage, or upon any other occa *327 sion calling for it, he makes an advance in the nature of a portion to that child, that will amount to an ademption of the gift by will. Trimmer v. Bayne, 7 Ves. 508. Monck v. Monck, 1 Ball & Beat. 298. Was the marriage settlement, as it is called, such an ademption ? The court below considered it as such, as to the whole of the provisions of the will except the land; but it held the devise of the land to be unrevoked by the subsequent contract.
Was the devise of the land revoked or adeemed by the marriage settlement ? I concur with the court below, in thinking it was not. It is conceded, that there is no instance in the english books or our own, of such a revocation. A gift or sale of the devised subject is indeed an ademption, because the thing itself is gone. It is taken away by the act of the testator himself, whose power of disposition is not restrained by his will. But the gift of other land cannot in like manner operate an ademption, because the land devised is not taken away. It is left for the will to operate upon; and to permit the gift of other land to effect an ademption, would bo to construe such gift as evidencing the animus revocandi, which the statute has provided shall only be declared by a subsequent will, codicil, or declaration in writing, made in the manner in which a will of lands is required to be made. There are, indeed, two ways by which a devise of lands may be rendered nugatory or may be avoided : either by taking away the subject, so that the will though unrevoked has nothing to operate on; or by revoking the clause, so that, although the subject remains, there is no will to dispose of it. But a gift of other land cannot operate to adeem, since the land devised is left for the will to operate on; nor can it operate to revoke, because revocation can only be according to the statute.
It is said, however, that notwithstanding the statute, there may be implied revocations. This cannot be denied ; but it may be confidently affirmed, that there is no *328 case in which a devise to a child of one tract of land has been held to be impliedly revoked by the gift of another. How far it was legitimate to set up any implied limitation in the teeth of the statute, may not now be questioned. We are bound by adjudications in this respect which we may not disregard. But where no precedent commands us to set the statute at defiance, we should steadfastly adhere to its wise and salutary provisions.
Again, it is said, that by the rules of equity an advance to a portioned legatee is to be taken as satisfaction. But these rules do not extend to the realty. They are rules for the personalty, over which the control of equity is entire. The subjects of legacies and distribution are within its peculiar jurisdiction. The legatee acquires no legal title by the will, and distribution can only be obtained through a court of chancery. That court, accordingly, can make and has made certain rules on this subject, which must now be followed. But the realty devised is not within its grasp. A devise passes the legal title to the devisee, and the question of revocation is for a court of law. Had Hooe and wife instituted their ejectment for the land devised, no question of their title could have been raised. In vain would the defendants have set up the gift of other land as a revocation of the devise. It could not be pretended to have that operation' in a court of law ; and it is equally clear that equity must follow the law in deciding the question of revocation.
It seems to be supposed, however, that as the contract in this case is not executed but executory, a specific execution would not be decreed except upon the terms of releasing the interests under the will. Whether this be so or not, it may not in this case perhaps be proper to decide, as the bill is filed not to carry into execution the marriage settlement, but to enforce the rights of the plaintiffs under the will. But if the question were before us, I should hesitate to accede to the proposition. *329 Contracts of marriage cannot be regarded as standing upon the ordinary footing of other contracts as to specific execution. When the marriage has taken place, there must be specific execution, unless there be fraud. Unreasonableness or delay, or any of the usual grounds of opposition, would seem inadequate to bar a decree for specific performance when the irreversible execution of it by marriage has once taken place. The parties, by that act, are placed in a situation in which the status quo ante has become impossible forever. Specific execution, from the moment of consummation, seems to be inevitable for the purposes of justice. I except, as of course, matters of fraud or of contract. If, for instance, in this case the agreement had been obtained by fraud, or if Hooe and wife had agreed that her rights under the will should be given up in consideration of the settlement, a case would certainly be presented in which a court of equity would compel the necessary releases to effectuate justice. But that cannot be in the case as it stands. There is no proof of fraud, whatever we may think of the unusually peremptory requisition of the intended husband. Nor is there any proof that he even knew of the provision by will, and much less that he agreed that one provision should be substituted for the other. Upon what ground, then, could a court of equity take away the settlement rights of Hooe, unless he would relinquish the testamentary rights of Maria Hansbrough in the lands devised to her, when neither she nor her intended husband ever assented to, or so understood, the contract of marriage? There can, I think, be no sound reason for doing so, and if the question was fairly presented by the record, I should incline to decide it in the negative. With these views, I am of opinion to affirm the decree so far as respects the real estates devised by Hansbrough to the female plaintiff.
We are next to enquire, whether the court erred in declaring the bequests of personal estate to Maria Hans *330 fynough. to ¡have .been, adeemed and. satisfied by .the, marriage, .contrast,?. ¡ i4nd-I -am'iof. opinion, .that in • this .also fhefipur-t,was,¡right.Hpon-the argument of, the case., I was .disposed ¡to, think, that ¡as .the limitations in. the. wifi and ¡in the-settlement were-somswhat different, an.abso,- * ■ ' lute fee, .being, limited, ,tp, ¡the unborn ¡children, -in fb,p. one case,-and, a ¡contingent, one. in .the .other,, there,¡.cqrild fie no,ademption. -.But refie,ctioniaud.,authority,haye satis•fied.'.»metthat,;if thekd^geftiObjee.ts,Qf,.tlie,,provision, ar,e the .same,-in both,fit is.not material though there be some .variation,-as to.-those.remotely,in,.contemplation of,tfie 'party.. ¡.Thus, as both ¡the provision»,are.fqr Af.ariq,.IfqnsbrougJh who .was the. direct object, of ¡ them3l and. as to, sher doiinot-rnateriafiyi-varyjiiti.is! immaterial that, the .provi; sions.differ,1somewhat¡ as, to her, unborn-children, who -yr&x&;rempt'ely t contemplated,, .and] may, truly be regarded astmere accessaries.to herself- The,¡case of.Mpnalgg, Afqnck: ¡ is,in. this,. respect,,. much), stronger (. than , this, There;,lord!'Monck bequeathed tofhis hrothers^fPQO, the, ¡interest, to. h.e.-p.aid-.to him, during ¡life, .and .if he¡ mar; ljiedy ¡with ¡po.wer¡to, -jpintyre. .hip ..wife- by ¡an .annuity of £150. per,.annum, fl}e principal. tQ go to, the .issue of the marriage-,.and inidefaulti&c. -oyer..- ¡He,,afterwards,.pn his brother?»¡marriage,),gave. his.¡bond ¡to trustees,ixi thei.mairriage, settlement} declaring the, ¡uses tc> be to pay the interest to,his hr other, for <fifm remainder to his wif$ for-life, the‘principal, to fie, divided ¡amongst,,the. issue,*» such- shares, as the father-, should, appoint,.. The, variance in the. provisions .was, nob ¡held, ¡sufficient, ¡to, relieve the base ¡from the* general, rule. ;,J, think, then, there is;,no diffipulby in this .case .arising out of, the,¡variance of ,fh,e provisions;.and there-.is.,oertainlyi,none., as¡ ¡to, the. ader quacy ;of. -the settled¡property to ..coyer,. all, the personal bequests.;-) Bor ■ ¡though) the .devise ,‘of ,the;‘,2u«d.oannpt be ■■ revoked.. or > adeemed-, -by, the,, gift of o ther land,, yet the!-gift of (,that, - other -land is, ¡an .advancement which up.oh ithe-mules, of .equity will, -if, adequate,. ¡adeem ¡ the *331 persona] bequests. Now, there can be no doubt, that the 400 acres of land and the personal estate in the settlement are of more value than all the personal interests bequeathed to Maria Hansbrough by the will; and if so, they are, including the share in the residue, adeemed by the settlement. As to the doctrine respecting the residuum,.see the cases collected in Hovenden’s note 3 to Wilson v. Piggott, 2 Ves. jr. 350.
The counsel for the appellants has presented another view of this case, which requires to be noticed." He considers it as falling within the influence of the rule, that no man can be permitted to claim under and against a. will. But here the appellees do not claim any thing against the will. It is true, they claim lands, slaves, money &c. which were otherwise disposed of by the will. But the testator himself, by his own act, adeemed and revoked that testamentary disposition. From the moment that he made the .settlement,,so much of the will as had given the settled property to others was annihilated, and the appellees do not assert a claim inconsistent with the will. So. that although, so far as respects the personal bequests to them, there is an ademption, yet it is not because they are claiming against the will, but because the testator is conceived to have satisfied those bequests by the, marriage,settlement .in .his lifetime. If the principle contended for could be ap^ plied to gifts in satisfaction of legacies, there could never be a difficulty as to an advancement being intended as a satisfaction, or not. In-every case, the donee would be compelled to give up the one or the other.
Decree reversed, and bill dismissed.,.